IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>REAL PROPERTY LOCATED AT (REDACTED) LAYTON, UTAH 84040, et al.,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO STRIKE CLAIM AND GRANTING CLAIMANT PAUL GOTAY'S MOTION IN OPPOSITION<br><br>Case No. 1:07-CV-6 TS |

This matter is before the Court on Plaintiff's Motion to Strike the Claim of Paul Gotay in this civil forfeiture proceeding, and Claimant's Motion in Opposition. Plaintiff argues that the claim should be dismissed because of Mr. Gotay's failure to comply with the timing requirement of Supplemental Rule G(5)(b), which requires that a claimant file an answer within 20 days after filing a claim. Mr. Gotay asks that the Court extend the time period and allow his claim to proceed on the merits. He argues that Plaintiff would not be harmed by the time enlargement,[1] and that his status as a potential witness in the underlying criminal case,[2] to the extent that

---

[1] Claimant's Mem. Supp. Mot. in Opp., Docket No. 61, at 4.

[2] *United States v. Ross*, Case No. 1:06-CR-97 (D. Utah filed Nov. 21, 2006). The Defendants pled guilty. Gotay was never called to testify.

1

Plaintiff was necessarily put on notice of his claim, excuses his failure to comply with the rule.[3]

For the reasons set forth below, the Court will deny the Motion to Strike and grant the Claimant's Motion to Oppose.

I. BACKGROUND

Claimant Paul Gotay was hired by John and Susan Ross on May 19, 2005, to represent the Rosses in an imminent criminal prosecution.[4] Gotay says his legal agreement with the Rosses called for him to be paid $50,000 as a non-refundable retainer when the indictment occurred.[5] On November 6, 2006, the Rosses transferred to Gotay three checks amounting to $381,000; that same day, Gotay set up a bank account in his name and deposited the checks.[6] Gotay says the transfer was pursuant to an agreement between Gotay and the Rosses to set up a litigation fund from which they could draw money to pay costs during the course of the criminal proceedings.[7] On November 16, 2006, the government seized the bank

---

[3] Docket No. 61, at 4-5.

[4] Claimant's Mot. to Sever, Docket No. 82, ¶ 3. The government had begun on May 6, 2005, an investigation into Mrs. Ross's actions as Director of Federal Programs for the Davis School District. (Docket No. 8, ¶¶ 7-9). Mrs. Ross was accused of using her purchasing authority to personally profit by selling books to the District through an intermediary company. (Docket No. 8, ¶¶ 10-21).

[5] Docket No. 82, ¶ 3-4.

[6] Plaintiff's Verified Compl. for Forfeiture In Rem, Docket No. 8, ¶ 46.

[7] Docket No. 82, ¶ 4-5.

funds as part of the present civil forfeiture action, which stems from the criminal prosecution of the Rosses.[8]

The government filed an Indictment against the Rosses on November 21, 2006.[9] Ten days later, the government moved to disqualify Gotay as counsel for the Rosses.[10] On December 14, 2006, the Court granted the motion to disqualify because of actual and potential conflicts of interest.[11]

The government filed the Complaint in this forfeiture action on January 12, 2007, and Gotay filed a timely Verified Claim on February 22, 2007 (Docket No. 21). Almost three years later, on November 25, 2009, the government moved to strike Gotay's claim for failure to file an answer. On December 3, 2009, Gotay opposed the government's motion and filed his Answer.

## II. DISCUSSION OF THE LAW

Rule G(5)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions requires a claimant to "serve and file an answer to the

---

[8] Docket No. 8, ¶ 5(f). Other property was also seized, including real property, two cars, and various other bank accounts. There are eight other claimants whose claims have not yet been resolved, including the Defendant in the criminal case, Mrs. Ross.

[9] *Ross*, 06-CR-97, Docket No. 1. The Rosses were charged with mail fraud, money laundering, theft from a state agency receiving federal funds, and willful copyright infringement. The Indictment listed the money in the bank account under Gotay's name as property obtained as a result of the crimes. (*Id.* ¶ 43(J)).

[10] *Id.* at Docket No. 11. The government moved to disqualify Gotay for three reasons: the possibility of antagonistic defenses between the co-defendants, Gotay's role as counsel for two of the government's witnesses, and Gotay's status as a potential witness because of the November 6, 2006, transfer of funds.

[11] *Id.* at Docket No. 22.

complaint . . . within 20 days after filing the claim."[12]  Supplemental Rule G(8)(c)(i) allows the government to "move to strike a claim . . . for failing to comply with Rule G(5)."

However, "the district court has discretion to extend the time in which a claimant must file."[13]  This discretion comes from Rule 6 of the Federal Rules of Civil Procedure.[14]  "When an act may or must be done within a specified time, the court may, for good cause, extend the time."[15]  This discretion, however, "is not unbounded."[16]  Rule 6 instructs that the time may be extended only "on motion made . . . if the party failed to act because of excusable neglect."[17]  There are thus three constraints on the court's discretion: there must be good cause, there must be

---

[12] In 2009, the time limit was changed to 21 days.  Since the relevant facts occurred in 2007, we use the old limit.

[13] *United States v. 51 Pieces of Real Property*, 17 F.3d 1306, 1318 (10th Cir. 1994); *see also United States v. Amiel*, 995 F.2d 367, 371 (2d Cir. 1993) ("Strict compliance with Supplemental Rule [G(5)] is typically required. . . . However, a court has discretion in appropriate circumstances to depart from the strict compliance standard.").

[14] *See* Supplemental Rule A(2) (stating that the FEDERAL RULES OF CIVIL PROCEDURE apply to asset forfeiture actions, as long as they do not conflict with any of the Supplemental Rules).

[15] FED. R. CIV. P. 6(b)(1).

[16] *51 Pieces*, 17 F.3d at 1318 (internal quotations omitted).

[17] FED. R. CIV. P. 6(b)(1)(B).  In his opposition (Docket No. 60), Gotay does not explicity move for an extension of time under Rule 6.  However, his accompanying memorandum and proposed order seek relief from the timing requirements of Supplemental Rule G(5)(b) and state the grounds on which he seeks relief, making it a valid motion under Fed. R. Civ. P. 7(b).

a motion made to invoke the discretion, and the court must find that there was excusable neglect.[18]

The Ninth Circuit found that good cause "often [ ] means little more than that there is a good reason for the action proposed to be taken."[19] This liberal standard is met by a mere showing of good faith or lack of prejudice to the adverse party.[20] "Even when the extension is sought after the time limit has expired, the good cause standard is satisfied merely upon a showing of excusable neglect."[21] The Supreme Court noted that of the three constraints, excusable neglect is the most difficult for the moving party to overcome.[22] Excusable neglect is a threshold to the Court's Rule 6(b) powers and, thus, is the focus of this discussion.

The Supreme Court, in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,[23] said that the words "excusable neglect" were intended to carry their ordinary meaning.[24] Under the ordinary meaning of neglect, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late

---

[18] FED. R. CIV. P. 6(b)(1)(B).

[19] *California Trout v. F.E.R.C.*, 572 F.3d 1003, 1027 (9th Cir. 2009).

[20] *See* 4B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1165 (3d ed. 2010).

[21] *California Trout*, 572 F.3d at 1027 n.1.

[22] *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 897 (1990) ("This last substantive obstacle is the greatest of all.").

[23] 507 U.S. 380 (1993).

[24] *Id*. at 388. The Seventh Circuit later noted that although the *Pioneer* court was interpreting bankruptcy procedural rules, "the tenor of its opinion is that the term ['excusable neglect'] bears the same or similar meaning throughout the federal procedural domain." *Prizevoits v. Indiana Bell Tel. Co.*, 76 F.3d 132, 134 (7th Cir. 1996).

filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."[25] The court noted that determining whether the neglect is excusable "is at bottom an equitable [determination], taking account of all relevant circumstances."[26]

"Forfeiture cases only rarely identify the same list of considerations in deciding whether a particular claimant's circumstances constitute 'excusable neglect,' most likely because the determination is equity-ridden, and the peculiar facts of each case involve different equities."[27] Factors that are considered in forfeiture cases include:

> [1] When the claimant became aware of the seizure, [2] whether the claimant was properly served, [3] whether the government would be prejudiced, [4] whether the government encouraged the delay or misguided the claimant, [5] whether the claimant informed the government and the court of his interest before the deadline, [6] whether the claimant had expended resources preparing for trial, [7] the claimant's good faith, [8] the claimant's health problems, [9] whether the government has complied with procedural rules, and [10] whether the claimant was acting *pro se*.[28]

Other considerations also inform the Court's decision. "Fault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable."[29] Also, "the district court should

---

[25] *Pioneer Inv. Servs.*, 507 U.S. at 388.

[26] *Id.* at 395.

[27] *United States v. Borromeo*, 945 F.2d 750, 753 (4th Cir. 1991).

[28] *Id.*

[29] *City of Chanute v. Williams Natural Gas*, 31 F.3d 1041, 1046 (10th Cir. 1994).

**6**

consider the amount seized."[30] This would help a court determine how much harm a claimant would suffer due to the forfeiture.[31]

Underlying the determination of excusable neglect, as the Claimant noted in his memorandum, is the federal courts' general disfavor for striking claims.[32] "Forfeiture is a harsh penalty especially when the outcome is forced because of technical and procedural errors."[33] This suggests that in close cases, courts will avoid granting a motion to strike the claim.

### III. ANALYSIS OF THE CASE

There is no question that Mr. Gotay violated the requirements of Rule G(5)(b). His answer was due on March 14, 2007. He filed it 995 days late, on December 3, 2009. However, he asks the court to allow the case to proceed on the merits, on a finding of excusable neglect.[34]

Four circumstances weigh strongly in favor of the Claimant: (1) allowing Mr. Gotay to file his answer would not prejudice the government; (2) Mr. Gotay's timely Verified Claim put the government on notice from the start; (3) Mr. Gotay will be

---

[30] *United States v. $125,938.62*, 370 F.3d 1325, 1329 (11th Cir. 2004).

[31] *See United States v. $103,387.27,* 863 F.2d 555, 563 (7th Cir. 1988).

[32] *See United States v. 1866.75 Board Feet and 11 Doors and Casings*, 2008 WL 839792, at *2 (E.D. Va. 2008) ("Granting a motion to strike is a drastic remedy that is generally disfavored by federal courts.").

[33] *$125,938.62*, 370 F.3d at 1329.

[34] Because Gotay's motion asks for an equitable extension of time, the second Rule 6(b) constraint ("on motion made") is overcome. *See supra*, note 17.

substantially prejudiced if his claim is dismissed; and (4) the federal courts are reluctant to strike claims for procedural mistakes.

As further discussed below, because the government was on notice, allowing the claim to proceed on the merits would not prejudice the government. Just as Mr. Gotay waited to file his answer, the government waited before moving to strike the claim. The government could have made the motion to strike anytime after March 14, 2007, but chose to first resolve the underlying criminal case. The fact that the government waited until November 25, 2009, to move to strike the claim suggests that Mr. Gotay's delay in filing his answer does not substantially prejudice the government. Furthermore, the possibility that Mr. Gotay's claim defense will succeed on the merits is not prejudicial. The government has an interest in making sure that justice and congressional intent are accomplished.[35] Therefore, not only would allowing Mr. Gotay's claim to continue on the merits not prejudice the government, but it would actually further the government's interest.

By filing a timely claim to the property, Mr. Gotay fulfilled the purpose of a verified claim: to ensure that "[a]ny party who wishes to defend a forfeiture action [ ] be forced to swear to his interest in the forfeited property."[36] The government had ample notice of Mr. Gotay's intent to lay claim to the money in the account.

---

[35] *See Borromeo*, 945 F.2d at 754 ("If [the] claim is valid, and the government can restore [the claimant's] property to her while retaining what is properly forfeited, the action is a success; justice and congressional intent are satisfied.").

[36] *United States v. Beechcraft Queen Airplane*, 789 F.2d 627, 630 (8th Cir. 1986).

The third circumstance in Mr. Gotay's favor is that he would suffer substantial harm if his claim is dismissed. His claim is for the $50,000 he earned as a non-refundable retainer fee. Were the Court to strike his claim, Mr. Gotay would lose the value of the work he contracted to perform.

Finally, the Court is reluctant to strike claims that may be meritorious. It is not in the interest of justice for claimants to lose property because of minor procedural missteps, and it is within the court's broad discretionary power to forgive those missteps and allow a case to proceed.

Considering that the government would not be prejudiced by an extension of time and was on notice of Mr. Gotay's claim, the Court exercises its equitable powers and denies the government's Motion to Strike Claim.

## IV. CONCLUSION

For the reasons discussed above, it is hereby

ORDERED that Plaintiff's Motion to Strike Claim of Paul Gotay (Docket No. 57) is DENIED. It is further

ORDERED that Claimant Paul Gotay's Motion to Oppose (Docket No. 60) is GRANTED.

DATED July 14, 2010.

BY THE COURT:

TED STEWART
United States District Judge